Rockingham
No. 7495

TOWN OF HAMPTON

v.

SPECIAL BOARD OF THE STATE OF NEW HAMPSHIRE

October 29, 1976

*Casassa, Mulherrin & Ryan (Mr. John J. Ryan* orally) for the plaintiff.

*David H. Souter,* attorney general, and *Donald W. Stever, Jr.,* assistant attorney general *(Mr. Stever* orally), for the defendant.

GRIMES, J. This is an appeal from the denial by the Special Board of the town's application to fill three-quarters of an acre of saltmarsh in the Hampton River estuary. After hearing, the superior court found that the town had not met its burden and upheld the action of the board. Plaintiff's exceptions were transferred by *Douglas,* J.

RSA 483-A:4 (Supp. 1975) provides that appeals from the decision of the special board are governed by the same procedure provided in zoning appeals under RSA 31:74-87. The decision of the board therefore can be overturned only if it is found to be unlawful, unreasonable or unjust. The plaintiffs came here with an adverse finding of the trial court who was not persuaded that the board's decision was unlawful, unreasonable or unjust.

Plaintiff argues that because it is a town and wishes to use the filled land for a public purpose, it would not constitute "despoliation and unregulated alteration" of the marsh and that there should be a balancing of the public interests involved so as to permit it to fill the land. It may be noted under RSA 483-A:4-a (Supp. 1975) that "municipal corporations, governmental departments and agencies, or subdivisions thereof" are included within the scope of the regulation.

Hampton's reasons for wanting to fill the three-quarter acre of saltmarsh were to gain access to make repairs to a sewer which crosses the marsh and eventually to replace the present sewer line and to expand the existing parking lot which had been built on the marsh before the enactment of RSA ch. 483-A. However, it appears that repairs to the existing sewer have been made over the past twelve years and the town's own witnesses testified that the replacement sewer can be constructed outside the marsh or on a strip of filled land over the present easement which could be designed so as not to interfere with the productive marsh. There was evidence that the town plans to construct a parking garage on the site of the present parking lot and that this would eliminate the need for enlarging the lot by filling the marsh.

Although the town desired to fill only three-quarters of an acre out of some 3,500 acres of saltmarsh, there was evidence that the three-quarter acre sought to be filled contained predominantly Spartina alterniflora grass, one of the most highly productive sources in the world of carbon energy, upon which all living things are dependent. There was further evidence that the filling of the three-quarter acre would destroy forever the productivity of the marsh and its life and that this would be detrimental to the public.

In the light of this evidence and considering the basic purpose of the statute, the trial court's failure to find that the board's denial of plaintiff's application was unlawful, unreasonable or unjust was proper. *Sibson v. State,* 115 N.H. 124, 336 A.2d 239 (1975).

*Appeal dismissed.*

All concurred.